468 A.2d 383

**Charles H. O'DONNELL, Jr., et al.**

**v.**

**BASSLERS, INCORPORATED et al.**

**No. 52, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Dec. 9, 1983.

508

---

Thomas E. Lloyd, with whom were Lloyd, Kane & Wieder, Ellicott City, on brief for appellee, Basslers Inc.

Paul T. Johnson, Asst. County Sol. for Howard County, with whom was Timothy E. Welsh, County Sol. for Howard County, on brief, for appellee, Zoning Bd. of Howard County.

Lewis Straughn Nippard, with whom were Sybert, Sybert & Nippard, Ellicott City, on brief, for appellants.

Argued before LISS, BISHOP and BLOOM, JJ.

LISS, Judge.

This case is Howard County's version of Airport II.[1] Airport I is reported as *O'Donnell v. Bassler,* 289 Md. 501, 425 A.2d 1003 (1981). The case at bar is an appeal from a decision of the Circuit Court for Howard County which affirmed a decision and order of the Zoning Board of Howard County, adopting an amendment to the zoning regulations. The amendment authorized the Board of Appeals to grant a special exception/special permit for the operation of an airport in certain zoning districts of Howard County.

The case began on February 23, 1981, when one of the appellees, Basslers, Incorporated, petitioned the zoning authority (Howard County Council sitting as the Howard County Zoning Board, as provided in the Howard County Code § 16.200–201) to amend the text of the zoning regulations so as to authorize the Board of Appeals to grant a special permit, after public hearing, for a commercial airport. The amendment proposed to add a new Section 122 F.1.(c) to Section 122 F "Special Exceptions Uses and Permissible Zoning Districts," to read as follows:

122.F.1(c) Airports and Commercial Aircraft Landing Fields

A special Exception may be granted in the R, M–1, M–2, and ID Districts for construction and operation of an airport or commercial aircraft landing field, provided that:

(1) The airport is an appropriate use of the land.

(2) The minimum lot size is one hundred fifty (150) acres.

(3) The proposed facility will meet the standards and requirements of all State and Federal Aviation Agencies.

(4) The operation of the airport in accordance with the standards and requirements of the State and Federal

---

1. The reference is to a series of melodramatic motion pictures relating the adventures of several characters involved in the air transportation business.

aviation agencies will not require limitation of the heights of structures on adjacent land to less than the height limit specifically prescribed for the District in which such land is situated.

(5) The proposed airport landing areas used by any non-jet aircraft having a gross weight of 12,500 pounds or less shall be provided with a dustless surface.

(6) No area used by any aircraft during takeoff shall be located within a minimum distance of five hundred (500) feet from any residential property line, or three hundred and fifty (350) feet from any non-residential property line, or a minimum of one thousand (1000) feet from any public or private institution, including schools, hospitals, sanitariums and churches, or a minimum of one thousand (1000) feet, measured along an extension of the runway centerline, from any adjacent residential or commercial zones on the approach or departure ends of the runway. Buildings, hangars or other structures shall be at least two hundred (200) feet from any residential property line, and one hundred (100) feet from any non-residential property line, and no parking of aircraft or vehicles shall be allowed within one hundred (100) feet from any property line.

(7) The special Exception may include appropriate accessory uses, such as restaurants and snack bars, auto rental agencies, airline business offices and service facilities, but may not permit manufacturing as an accessory use.

(8) The application shall be referred to the appropriate State and Federal aviation agencies for the report of such agencies.

(9) The Office of Planning and Zoning shall require that adequate off street parking and loading spaces be provided to serve airport activities and accessory uses. The number of parking and loading spaces to be required shall be determined by the Office of Planning and Zoning.

The technical staff of the County Office of Planning and Zoning filed its report on April 1, 1981, after investigation and review of numerous reports from other County agencies. The technical staff recommended approval of the amendment with the addition of a provision requiring an applicant to the Board of Appeals to prove need for the special permit. The staff concluded that the amendment sought was almost identical to the regulation proposed by the Office of Planning and Zoning during the 1977 comprehensive rezoning cycle, that it was in conformance with the 1971 General Plan, and that it contained adequate protection for the safety and welfare of County residents.

The Planning Board unanimously recommended approval of the amendment as modified in accordance with the technical staff's report.

Following timely notice published in two local newspapers, hearings were held at which all interested parties were heard. The petitioner presented evidence, generally summarized below in the Board's decision and order. The evidence included official reports and documents from the various County agencies which were incorporated into the hearing record.

There was evidence that 421 licensed airplane pilots reside in Howard County, and approximately 125 general aviation aircraft are registered to Howard County citizens.

These pilots and aircraft comprise an active segment of what is known as general aviation: agricultural airplanes, firefighters, search and rescue, aerial mapping, and transportation. General aviation airplanes embarked some 42% of the total passengers transported in airplanes in Howard County in 1979. It was contended by the petitioner that there was no facility in Howard County to accommodate these airplanes and pilots, there being only one private, one-plane landing field in existence, as a nonconforming use.

The petitioner urged that there was a definite need for airports to accommodate the typical single-engine, four-place privately owned airplanes, something similar to the

some 8,000 to 9,000 privately owned public-use airports in the United States.

Mr. Elliott Simons, an air traffic controller at Baltimore-Washington International Airport, stated that there was a need for a satellite airport in Howard County to accommodate some of the small general aviation airplanes in the area. Such a facility would relieve the congestion and conflict of mixing small airplane traffic with large airliners at Baltimore-Washington International Airport. In approaching for a landing, airplanes slow to near their landing speed; the large airliner in the landing configuration flies almost twice as fast as does the small four-place private airplane, but they must both fly the same flight path to land on the runway. Additionally, the large airliner trails a massive and turbulent wake which is not visible but which may upset small airplanes. These factors dictate large separations and long delays.

There was testimony concerning the compatibility of the use requested with other uses in the affected zoning districts (R, M-1, M-2 and ID), and it was contended that the proposed amendment was in compliance with the then proposed 1981 Howard County General Plan (since adopted as the 1982 General Plan). There was testimony to the effect that there was no need for commercial accessory uses in the amendment other than for the charging of "tie-down" fees which the State of Maryland classifies as a commercial activity. The petitioner indicated its intent to prohibit jet aircraft and large aircraft use under the proposed amendment.

Charles H. O'Donnell, Jr. and other concerned citizens of Howard County protested the proposed amendment. The main thrust of the protestants' opposition to the regulation was toward the provision in the proposed amendment permitting commercial uses. There was general agreement, however, that there was a need in the zoning regulations for airport uses to accommodate Howard County citizens.

On September 17, 1981, the Zoning Board adopted an amendment to the zoning regulations substantially similar to the amendment proposed by the appellees except that it provided additional protections to the residents of Howard County in the form of the following additional conditions:

(1) The title of the provision itself was changed from "Airports and Commercial Aircraft Landing Fields" to "Aircraft Landing and Storage Area—Public Use, Private Ownership," thus removing the commercial nature of the permitted use.

(2) The limitation of fifty airplanes which could be stored on site was imposed, whereas there had been no limitation in the proposed amendment.

(3) The size of the airplanes permitted was reduced from 12,500 pounds to 6,000 pounds.

(4) The use of the airport was restricted to fixed wing aircraft. Specifically, use of helicopters was prohibited at the facility.

(5) All commercial accessory uses proposed in the petition were prohibited in the adopted amendment, with the exception of tie-down fees, and the sale of navigation charts and equipment.

(6) All airplane operators were required to register and provide identification information.

(7) Use of the airfield for flight instruction and practice was prohibited.

(8) The proposed use was required to meet a need of the residents of Howard County for such a facility.

The amendment as adopted was not resubmitted to the Planning Board for its consideration nor was the public given the opportunity by hearing or otherwise to comment upon the revised amendment as adopted. One member of the Zoning Board filed a dissenting opinion.

O'Donnell and other protestants filed an appeal to the Circuit Court for Howard County under the Maryland B Rules. Basslers, Inc. joined the appeal as an appellee. The

case was submitted to the Honorable Guy J. Cicone on the record before the Zoning Board. After argument by counsel, Judge Cicone rendered an opinion and order affirming the action of the Zoning Board. O'Donnell and others then noted this appeal, raising the following issues for determination by this Court:

    I. Whether the challenged amendment to the Howard County zoning regulations was a valid exercise of the Zoning Board's powers?

    II. Whether the notice of the zoning hearing was legally sufficient?

## I.

■ Appellants mount a two-pronged attack on the validity of the amendment as adopted. They argue initially that the amendment as adopted is not supported by "competent, material and substantial evidence" sufficient to make the adoption of the amendment "fairly debatable." *Storch v. Zoning Board of Howard County,* 267 Md. 476, 298 A.2d 8 (1972).

Sections 16.207(b)(6) and (7) of the Howard County Code enunciate the appropriate standard of review for the court to follow in passing on zoning regulation amendments adopted by the Zoning Board. Were the amendments based on competent, material and substantial evidence, or were they, to the contrary, not so supported, and therefore, arbitrary and capricious?

Both the Office of Planning and Zoning and the Planning Board recommended granting of the petition as proposed by the petitioner. This alone would make the Zoning Board's action fairly debatable and not arbitrary or capricious. *Board of County Commissioners of Howard County v. Turf Valley Associates,* 247 Md. 556, 233 A.2d 753 (1967). The Court of Appeals has held that the report of a planning board or of its technical staff is, in itself, sufficient evidence to make the Zoning Board's action fairly debatable. *Storch, supra,* 267 Md. at 489, 298 A.2d 8.

Appellants contend that the Planning Board's original recommendation of approval in this case was premised on the initial proposal of the appellee for a "commercial airport" which the Zoning Board found would not promote the public health, safety, and welfare of the residents of Howard County. They argue that what resulted from the hearing was a regulation permitting private airfields and especially the expansion of the private airfield of the appellee Bassler, beyond the limits imposed by the then existing provisions of Section 122 F.1 of the zoning regulations. They urge further that there was not sufficient competent, material and substantial evidence to support the action of the Board.

They asseverate that to affirm the Circuit Court's action in this case would permit the Zoning Board to by-pass submission of its amendments to the Planning Board by simply advertising a proposal, receiving input on it and then adopting a totally different regulation without resubmitting the new proposal to the Planning Board or receiving from the public any objection to the final proposal as adopted. *See von Lusch v. Board of Commr's of Queen Anne's County,* 268 Md. 445, 454, 456, 458, 302 A.2d 4 (1973), where an alteration in a proposed amendment classifying an existing use as a "special exception" instead of a "non-conforming use" as initially advertised constituted such a substantial difference as to require readvertisement and a new hearing. The Queen Anne's County zoning ordinance contained a provision that no change or departure from a proposed amendment shall be adopted without resubmission to the Planning Commission. Appellants, however, direct us to no such restrictive requirement on Howard County's zoning regulations.

In any event, a comparison of the actual language of the proposed amendment and the enacted amendment requires a conclusion that the differences are not substantial. Both the proposed and the enacted amendments deal with a provision which will permit small aircraft airports in Howard County in the R, M–1, M–2 and ID Zoning Districts by special exception with certain conditions of approval. It is

only those conditions of approval which changed in the enacted amendment. The Zoning Board, based on testimony provided to it, deleted the commercial nature of some accessory uses, and tightened the controls on the number, size, and type of aircraft permitted to use the airfields. While these changes were not substantial in terms of the notice question involved, in that they did not amount to a new proposal, the changes were significant enough in terms of the concern for the compatibility of the uses of land, to make the Zoning Board decide that the original proposed amendment was not in accordance with the public welfare and the comprehensive plan and to require the adoption of the conditions included in the enacted amendment so as to conform to the public welfare and the comprehensive plan.

It is clear to us that the Zoning Board, by its adoption of the proposal, as amended, created a county-wide special exception use to fill a need in Howard County. A recitation of the history of zoning regulations with reference to airports in that County may clarify the necessity for the Board's action.

Appellee Bassler was granted a special permit for a commercial airport in Howard County in December of 1976, pursuant to the 1961 Howard County zoning regulations. This special authority to issue permits was granted to the Board by the County Council of Howard County under the 1961 zoning regulations by the terms of which the Board was entrusted to grant special exception use permits for commercial aircraft landing fields. The Board "was required to find that such use is essential or desirable to the public convenience and welfare," Section 19.05 of the 1961 zoning regulations, and that it would not "menace . . . the general welfare." Section 31 of the 1961 zoning regulations.

The Board, in granting Bassler's application, had imposed certain additional conditions on the permit issued by it to Bassler. The Circuit Court held on appeal that the Board had exceeded its authority by imposing the additional conditions and had therefore committed an error of law. The

Circuit Court modified the Board's order granting the special exception use permit by eliminating the additional conditions imposed by the Board. That action of the Circuit Court was appealed to this Court which affirmed in an unreported per curiam opinion. Subsequently, the Court of Appeals reversed in *O'Donnell v. Basslers, supra,* on the basis that the Board, by virtue of its expertise and specialized judgment, had been entrusted to perform the administrative function of deciding whether the special exception use permits should be granted and upon what conditions. Any effort by the Circuit Court to substitute its judgment for that of the Board was arbitrary and capricious and a usurpation of an administrative function.

In the interim, the Howard County Council had adopted its 1977 comprehensive zoning ordinance without including any provision for the continuation of commercial airports in Howard County, even though it knew that a commercial airport was operating in the County and was providing what was alleged to be a necessary service for a substantial number of County residents and businesses.

It was on this historical basis that the Zoning Authority (the Howard County Council sitting as the Howard County Zoning Board) was petitioned by Bassler to amend the text of the zoning regulations to authorize the Board of Appeals to grant a special permit, after public hearing, for a commercial airport in the R, M–1, M–2 and ID zoning districts.

As we have indicated, the evidence presented to the Board which established the need for the authorization of such facilities at least raised a "fairly debatable" issue. There was evidence that a substantial number of licensed pilots and general aviation aircraft were registered and used in Howard County. The Board also had before it the testimony of experts that the safety and convenience of the traveling public justified the adoption of the amendment and that its adoption would bear a substantial relationship to the public health, welfare and safety. The Board, in adopting the conditions it imposed on the special exception permit,

was exercising its administrative function for the benefit, safety and convenience of the citizens of Howard County. We conclude that the amendment as adopted was a valid exercise of the Zoning Board's authority.

## II.

■ The record in this case indicates that notice was timely published as required by the provisions of Section 16.204 of the Howard County Code. It advised that the Zoning Board, on the basis of a petition by Bassler's, was considering the adoption of an amendment adding a new section to the existing Howard County Zoning Regulations Aircraft Landing and Storage Area Special Exception (122.-F.1), to enable an airport or commercial aircraft landing field use to be granted in R (Rural), M–1, M–2 (Manufacturing Light/Heavy) and ID (Industrial Development) Districts.

The notice reserved the right to the Zoning Board to modify, alter, or change, by either additions or deletions, the proposed amendment, at the sole discretion of the Zoning Board.

Both the appellants and the appellees agree that the failure of an administrative board to give proper notice of a hearing as required by law is fatal to the jurisdiction of the board to conduct the hearing. *Cassidy v. County Board of Appeals of Baltimore County,* 218 Md. 418, 421, 422, 146 A.2d 896 (1958).

Appellants urged that the notice was defective because the amendment as adopted was substantially different from that which had been advertised.

The requirements for adequate notice were discussed by the Court of Appeals in *Cassidy, supra,* where the Court, considering 2 Merrill, *Notice,* Section 796, concluded that for notice to be sufficient, it must: (1) clearly apprise those interested to defend their interests without creating the impression that a final decision already had been achieved rendering their appearance futile; (2) state the authority of the agency and the facts which give it jurisdiction; and (3)

describe the character of the action proposed and the basis upon which it rests sufficiently to permit preparation of an intelligent defense. [218 Md. 424].

In *Cassidy,* the notice clearly apprised the public of the character of the action proposed and enough of the basis upon which it rested to enable an interested person to prepare intelligently for the hearing since "[a]nyone who attended the hearing prepared to defeat [a reclassification of use for a particular area] would likewise have been prepared to defeat the grant of a special exception." *Id.,* at 425–26, 146 A.2d 896. The Court, quoting from 2 Merrill, *Notice,* Section 796, stated the purpose of notification to be:

> [T]he heart of the requirement of notification in administrative proceedings [is that] the noticee should be apprised clearly of the character of the action proposed and enough of the basis upon which it rests to enable him intelligently to prepare for the hearing. If this minimum requirement is met, the notification is adequate, no matter how much it may fall short of the standards of pleading in judicial contests. [*Id.,* at 424, 146 A.2d 896].

In *Clark v. Wolman,* 243 Md. 597, 221 A.2d 687 (1966), it was noted that parties who had actual knowledge of the subject matter of the hearing and acted upon that knowledge waived any defect in the notice.

Appellants argue that *Rasnake v. Board of County Comm'rs. of Cecil County,* 268 Md. 295, 300 A.2d 651 (1973), is controlling in this case. We do not agree. *Rasnake* is cited for the proposition that substantial changes made in a proposed zoning amendment require additional notice and rehearing. A reading of *Resnake,* however, clearly indicates that that case is distinguishable on the facts from the case at bar. The change in *Rasnake* was so substantial that the restrictions imposed might well have rendered it impossible for an individual to use his land for any purpose. In discussing the purpose of notice the Court of Appeals cited with approval from 8A McQuillin, *Municipal Corporations,* Section 25.249 which reads in part as follows:

Ordinarily, if the ordinance or amendment as finally adopted contains alterations substantially different, amounting to a new proposal, from those originally advertised and heard, there must be additional notice, although no further notice is required after a properly advertised and properly conducted public hearing when the alteration of the initial proposal is insubstantial. Moreover, additional notice ordinarily will not be required when the initial notice is broad enough to indicate the possibility of substantial change and substantial changes are made at the initial hearing of the same fundamental character as contained in the notice. A notice has been said to be sufficient if it gives the average reader reasonable warning that property in which he has an interest may be affected by the proposed zoning legislation, and affords him an opportunity by the exercise of reasonable diligence to determine whether such is the fact. [268 Md. at 301, 300 A.2d 651].

We find it significant that in the instant case appellants' representatives either attended the Planning Board hearing or sent letters to the Board on April 8, 1981, some three months prior to the Zoning Board hearings. They attended the Zoning Board hearings, gave extensive testimony, and submitted evidence and petitions to the Board.

As a result of their opposition, the Zoning Board modified the proposed amendment by deleting the commercial uses to which they objected and added certain record keeping provisions to help citizens identify airplanes using any Howard County airport authorized by virtue of the regulations adopted. *Appellants had actual knowledge of the action contemplated, and the changes made were those urged by appellants.* Moreover, the last paragraph in the notice in this case specifically warned the public that the Zoning Board might make amendments to the proposed amendments based on evidence adduced at the hearing.

The Zoning Board, as a result of the evidence before it, concluded that the regulation as proposed would not be in accord with the comprehensive zoning plan because there

was no need shown for full service commercial airports in the regulations without any limitation on the size, weight, type and number of aircraft permitted to use the facility. It also concluded that there was a need for smaller commercial airports to accommodate some of the small general aviation airplanes owned and operated by numerous Howard County residents.

It is evident from the record that the zoning authority had specific statutory authority to grant less than that which was requested and that the protestants had actual notice of what was sought and presented their objections to the Board.

We conclude that the notice of hearing was legally sufficient to notify any interested person of the character of the proposed action so as to permit an intelligent opposition to it. Appellants appeared in response to the notice, fully participated in the hearings at all levels, and successfully prevailed upon the Zoning Board to adopt at least a portion of their views. The Zoning Board's final legislative action was within its powers and jurisdiction, was fully supported by competent, probative, and substantial evidence in the record as submitted, and was, therefore, fairly debatable.

ORDER OF CIRCUIT COURT AFFIRMED, COSTS TO BE PAID BY APPELLANTS.